# THE ILLINOIS TERMINAL RAILROAD COMPANY
## *v.*
## DAVID R. THOMPSON.

*Opinion filed June 23, 1904.*

1. RAILROADS—*what tends to show negligence on part of the company.* Evidence that a railroad company knowingly permitted a telegraph pole to remain for several years so close to the tracks that a brakeman, while climbing to the top of a box-car, was injured by coming in contact with the pole, tends to show negligence on the part of the company.

2. SAME—*what does not excuse company from permitting pole to be close to track.* A railroad company knowingly permitting a telegraph pole to remain for several years in dangerous proximity to switch tracks is not excused from liability for injury consequent thereon by the fact that the company did not own the tracks nor erect the pole, where it used the tracks in furtherance of its business, switching for the corporation which owned the track and erected pole.

3. SAME—*when question of plaintiff's notice is for the jury.* Whether a brakeman had, or should have had, notice of the position of a telegraph pole near the tracks and of the danger to himself resulting from such position is a question for the jury, under evidence that he had passed the pole two or three times on top of box-cars but had not noticed its position, and that at the time he was injured by being caught between the pole and a car it was snowing and the atmosphere obscured by smoke.

4. MASTER AND SERVANT—*a servant does not assume extraordinary risks.* A servant does not assume extraordinary risks not necessarily incident to his employment, unless such risks are known to him and he voluntarily continues to work after such knowledge.

5. PLEADING—*when word "its," in declaration, does not necessarily indicate ownership.* An allegation that the defendant railroad company permitted a telegraph pole to be erected in dangerous proximity to "its main switch track in its said switch yard" does not necessarily require proof of defendant's ownership of such track and yards in fee, but may be sustained by proof of right of user.

6. VARIANCE—*variance must be called to attention of trial court to be available on appeal.* To entitle a party to avail himself, in a court of review, of a variance between the allegations and the proof, he must show from the record that the variance was specifically called to the attention of the trial court, to allow opportunity for amendment of the pleadings.

7. INSTRUCTIONS—*when instruction does not allow jury undue latitude in assessing damages.* An instruction in a personal injury case authorizing the jury to assess the plaintiff's damages, if any, in such

amount as they may believe, from the preponderance of the evidence, he has sustained, does not allow the jury too great latitude, particularly where the elements of damage are specified in another instruction.

· 8. ESTOPPEL—*when defendant is estopped to urge question of variance.* If the defendant, by his instructions, interprets the declaration to call for proof of a certain state of facts, he is estopped, on appeal, to insist that proof of a different state of facts was necessary to avoid a variance.

*Illinois Terminal R. R. Co.* v. *Thompson,* 112 Ill. App. 463, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. PAUL MCWILLIAMS, Judge, presiding.

This is an action in case, brought on May 6, 1902, in the circuit court of Madison county by appellee against appellant to recover damages for injuries, received by the appellee on February 8, 1902, while appellee was in the service of the appellant. A plea of general issue of not guilty was filed by the appellant. The jury returned a verdict in favor of the appellee for $8875.00. Appellee entered a *remittitur* for $2875.00; and, a motion by the appellant for a new trial having been overruled, judgment was entered on the verdict for $6000.00; an appeal was taken to the Appellate Court, which has affirmed the judgment of the circuit court. The present appeal is prosecuted from such judgment of affirmance.

The declaration consisted of three counts. The first count alleged that "the defendant on the 8th day of February, A. D. 1902, was possessed of and using and operating a certain railroad in said Madison county, together with certain switches and a switch yard in the city of Alton in said county, and had or had permitted to be erected on the south side of its main switch track in its said switch yard in said city of Alton a certain telegraph pole, which said telegraph pole was not placed and erected at a sufficient distance from defendant's said main switch track in said switch yard, and trains pass-

ing thereon, so that persons operating said trains could safely perform their duties in said work while passing over and upon said railroad at said place, and that said telegraph pole, standing near said track, was highly dangerous to the servants of said railroad in operating its cars and trains thereon while performing their ordinary duties; that on the 8th day of February, A. D. 1902, aforesaid, the plaintiff, while in the employ of the defendant as brakeman, was then and there engaged in assisting in the operating and running of a freight train in the switch yard aforesaid for the defendant, and in the exercise of due care and caution for his own safety, and without any knowledge of the proximity of said pole to the said main switch track, was struck by said telegraph pole while said train was in motion, and was then and there thrown from the said train to the ground with great force and violence, and was run over by said cars and his ribs broken, his body bruised and his right arm so injured, that the same had to be amputated."

The second count is like the first, except that it avers that the pole was a telephone pole and omits the averment that the plaintiff was "without knowledge of the proximity of said pole to said main switch track," and avers that plaintiff was permanently injured.

The third count is like the second, except that it charges that the defendant had or had permitted to be erected a certain pole twenty feet high and eight inches in diameter.

The appellee had been in the employ of appellant as brakeman for about a week or ten days. He worked for the appellant about seven days in its yards, which were located in the enclosure of the Illinois Glass Company's plant in Alton, and, at the end of that time, was, on February 8, 1902, engaged as a member of a train crew assisting in hauling freight cars out of appellant's yard in the glass company's enclosure. Appellant did a switching business in Alton, and in the prosecution thereof

made up trains, moved cars, and delivered the same to the various connections required. In the yard in question were two tracks running east and west, of which the north track was called the "house track" and the south track was called the "scale track." The distance between the south rail of the house track and the north rail of the scale track is eight and one-half feet, and the pole in question was in the center of the distance between the two tracks. The pole in question was one of a line of telegraph or telephone poles, standing between the two tracks, and rising some ten or twelve feet above the tops of the cars when passing. On the north side of the house track opposite the pole in question was a house, called the "batch house." This batch house was so near the house track, that there was not more than six or seven inches between it and the roof of box-cars standing on the track. East of the batch house and north of the house track is a building called the warehouse, and between the batch house and the warehouse on the east is a space fifty-one feet wide through which a wagon-way runs. There is a plank crossing over the two tracks, between the east end of the batch house and the west end of the warehouse, about sixteen feet wide. The pole in question was about forty-six feet west of the plank crossing, or of the east end of the batch house. Appellee, on the day in question, a little after five o'clock in the evening, was climbing up the ladder on the side of a freight box-car, one of a moving train of cars, going west from the warehouse, which was some two hundred or three hundred feet east of the point where the injury occurred. The object of the appellee in climbing the ladder on the side of the box-car, near the rear end of the forward car of the train, was to reach the top of the car, so as to let off the brakes, to do which was a part of his duty. When near the top of the car he came in contact with the telegraph pole in question standing between the tracks, and was knocked off and fell to the

ground, and received the injuries for which this suit is brought. The proof tends to show that the distance between the pole and the roof of the car was some ten, twelve or fourteen inches, the distance between the pole and the car near the bottom being greater than at the top, because the cornice or roof of the car extended out some three or four inches. The appellee, while the cars were moving west on the house track, was between the house track and the scale track at a distance of some thirty or forty feet east of the pole at the time when he started to climb the ladder. Besides the freight car, attached to one of appellant's engines, there were ten other freight cars being drawn by the engine. The only way, in which appellee could climb to the top of the car, so as to get upon the same, was upon the side of the car where he made the attempt, because on the other side of the track the roof of the batch house left a space of only six or seven inches between the roof thereof and the roof of the freight car.

Henry S. Baker, and Travous, Warnock & Burroughs, for appellant.

John J. Brenholt, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

At the close of the evidence for appellee, and again at the close of all the evidence, appellant requested an instruction to find the defendant not guilty, and each instruction was refused.

*First*—The first question is, whether or not the appellant was guilty of negligence in permitting the telegraph or telephone pole, upon which, with other poles in a line with it, electric wires were strung, to be so near the track, upon which the cars were passing, as to injure appellee, while engaged in the performance of his duties.

In *Chicago and Iowa Railroad Co.* v. *Russell,* 91 Ill. 298, where the facts showed that, in descending the ladder

of a car, a brakeman was struck by a telegraph pole, standing only eighteen inches from the car, and knocked between the cars, and killed, and where the facts showed that the railroad company had permitted the telegraph pole to stand where it was for a period of some three years, this court said (p. 303): "It certainly was culpable negligence in the railroad company to permit, for so long a time, such an obstruction to be in such close proximity to its track, that an operative of the road should come in contact with the obstruction and be killed, when on a car, engaged in the necessary performance of his duties in the management of the train." In *Illinois Central Railroad Co.* v. *Welch*, 52 Ill. 183, it was held that it was negligence in a railroad company to allow the edge of an awning to its station house to be at a distance of eighteen inches from its track. In *Chicago, Burlington and Quincy Railroad Co.* v. *Gregory*, 58 Ill. 272, it was held to have been negligence in a railroad company to have a mail-catcher in dangerous proximity to its track, by means of which a fireman on the locomotive of the company, while passing a station in the night time, was struck and killed. To the same effect is *North Chicago Street Railroad Co.* v. *Williams*, 140 Ill. 275.

In the case at bar, the facts show that the telegraph pole, which caused the injury to the appellee, had stood where it was some four years, and there is evidence, tending to show that, besides the constructive notice implied from the length of time during which it had stood where it was, the appellant company had had actual notice of its dangerous proximity to the track, and to the cars passing on the track. The facts tend to show that the appellant company was guilty of negligence in permitting the telegraph or telephone pole to remain dangerously near the track for so long a time.

*Second*—Appellant lays stress upon the fact, shown by the evidence, that the yards in question were owned by the Illinois Glass Company, and not by the appel-

lant company; and that the Illinois Glass Company had erected the telegraph poles between the two tracks. The contention is that, for these reasons, the appellant company was not responsible for the cause of the injury, as it had not itself erected the pole in question. This is an immaterial consideration. The appellant was in possession of the tracks, and of the yard, and was engaged in the operation of its business in switching cars upon such tracks. It makes no difference whether the appellant company owned the premises in fee, or was in possession of them as a lessee, or licensee. The appellee was in the employment of the appellant company, and was engaged in the business of helping it to switch its cars in the yards in question with the means furnished to him by the appellant. It was his duty to climb up the side of the car upon the ladder, which was there, and to ascend to the top of the car to control the brakes thereon. While he was engaged in the performance of this duty, it was the duty of the appellant to furnish him a safe place, in which he could do the work required of him. The evidence tends to prove that the appellant knowingly permitted the pole to remain in its position of dangerous nearness to the track. .

In this connection it is charged by the appellant, that there was a variance between the allegation in the declaration and the proof upon this subject. Counsel for appellant construe the allegation in the declaration to the effect that appellant—"had or had permitted to be erected on the south side of its main switch track in its said switch yard * * * a certain telegraph pole, which said telegraph pole was not placed and erected at a sufficient distance from defendant's said main switch track, and trains passing thereon, so that persons operating said trains could safely perform their duties,"—to mean that appellant had erected the pole, or had permitted it to be erected; and, also, to mean that the switch track and the switch yard belonged to and were the property

of the appellant. It is said that the proof does not sustain these allegations, because the proof showed that the Illinois Glass Company erected the telegraph pole, or permitted it to be erected, and that the Illinois Glass Company, and not appellant, was the owner both of the tracks and of the switch yard.

In the first place, it is a sufficient answer to this contention that counsel for the appellant did not specifically call the attention of the trial court to the variance in question, when the evidence was introduced. A party, in order to avail himself of a variance between the proof and the declaration in a court of review, must show from the record that the alleged variance was specifically called to the attention of the trial court, so that thereby the opposite party could have an opportunity to amend his pleading. (*Wight Fire-Proofing Co.* v. *Poczekai*, 130 Ill. 139; *Chicago, Rock Island and Pacific Railway Co.* v. *Clough*, 134 id. 586; *Chicago and Grand Trunk Railway Co.* v. *Spurney*, 197 id. 471; *Traders' Mutual Life Ins. Co.* v. *Johnson*, 200 id. 359; *Illinois Life Ass.* v. *Wells*, 200 id. 445; *Chicago and Eastern Illinois Railroad Co.* v. *Filler*, 195 id. 9; *Lake Shore and Michigan Southern Railway Co.* v. *Ward*, 135 id. 511)..

Independently, however, of the failure to call the attention of the trial court to the variance, we do not think that there was such a variance, as is insisted upon by counsel for appellant. The language used in the declaration, while not strictly accurate, can be construed to mean, and evidently does mean, that the appellant had a certain telegraph pole or permitted it to be where it was. It is not necessary to construe the language used so strictly, as to make it mean that the appellant company had erected the telegraph pole or permitted it to be erected. It was sufficient that the appellant, which was using the switch yard and the tracks for the purposes of its own business, suffered and permitted the telegraph pole to remain where it was. The declaration charges that the pole was not placed at a sufficient dis-

tance from the track and trains passing thereon, so as to enable persons, operating the trains, to perform their duties safely. Inasmuch as it was placed in dangerous proximity to the track, it made no difference whether the appellant company placed it there, or whether the Illinois Glass Company, by whose permission appellant was using the switch yard, placed it there. Appellant was responsible for the fact that it continued to be there, and was suffered to remain there, while appellant's employes were engaged in the performance of their duties. The declaration alleges that the telegraph pole stood so near the track that it was highly dangerous to the servants of the appellant in operating its cars and trains thereon, and this allegation was sufficient without reference to the person or corporation, who originally placed the telegraph poles where they were. In regard to the other allegation complained of, it is not alleged that the appellant company was the owner of the track and the switch yard, but that the appellant had, or permitted the telegraph pole to be "on the south side of its main switch track in its said switch yard." The use of the possessive word "its," does not necessarily indicate ownership in fee. For the purposes of this case it is sufficient that the appellant was operating the switch cars upon a switch track and in a switch yard, which, by arrangement with the Illinois Glass Company, it had a right to use, and the possessive word, "its," may as well designate such right to use the track and switch yard, as an absolute ownership thereof. For the reasons stated, we are of the opinion that the objection upon the ground of variance is not well taken. As is well said by the Appellate Court in its opinion: "If by contract the glass company had control of the construction, repairs and general supervision and control of the yard and appurtenances, and of its own motion and right put up the pole in controversy, the defendant would not thereby be relieved of any duty which it owed to the plaintiff."

In *Chicago and Iowa Railroad Co.* v. *Russell, supra,* this court said (p. 301): "It is said there is a failure of proof that the telegraph pole was placed near the track by the railroad company, its agents or servants, or that the company had any knowledge or notice thereof. It was not essential to the liability of the railroad company that it should itself have placed the telegraph pole where it was; it was sufficient that the company should have suffered it to be and remain in such dangerous proximity to the track. It is true there is no direct evidence that the company had actual knowledge or notice of the position of the telegraph pole. * * * This court has often decided that notice of a defect or obstruction will be presumed after the lapse of a sufficient time."

*Third*—It is claimed on the part of the appellant, that the appellee was not in the exercise of due care for his own safety at the time when he came in contact with the telegraph pole. The appellee cannot be charged with contributory negligence, if he did not have notice of the dangerous proximity of the telegraph pole to the track and the cars passing upon the track. There is evidence in the record tending to show that, while the appellee may have seen these poles which were erected between the north and south tracks in the yard, yet that he had no notice of the fact, that the pole, which caused the injury, was not within a safe distance from the north track and from the cars which might pass upon the north track. There was evidence, tending to show that this particular pole had swayed towards the track, so that it was nearer than if it had occupied a perfectly upright position. There is also evidence, tending to show that some of the cars which passed upon the switch track were wider than other cars. The appellee himself says in his testimony: "I was working as a brakeman for the company, and the last work I was to do there with this train was to get up on top of the cars and let off the brakes, and, as I was climbing up, this post knocked me off the side

of the car. * * * I think there were eight or nine handles to run on; it was my duty to go up on the car and let off the brakes; the engine was behind the cars and was pushing them out towards the town and the Illinois Terminal depot. I never had any knowledge of the proximity of this pole. I never had any notice of the pole being there. When I passed it before that, I must have been on top of the box-car." The evidence tends to show, that appellee had not passed by the place where this post stood more than three times before he was injured, and that he was then on the top of a car. There is also evidence, tending to show that, at the time when this injury occurred, it was snowing, and the atmosphere was obscured by smoke from the engines of the glass company's plant and from those of a certain box factory located there. Under all these circumstances it was a question for the jury to decide whether the appellee had such notice, not merely of the position of the telegraph pole, but of the danger to himself resulting from its position, as to charge him with a failure to exercise ordinary care for his own safety. (*North Chicago Street Railroad Co.* v. *Dudgeon*, 184 Ill. 477). Appellee had a right to presume that reasonable care had been used to make the place where he was to do his work reasonably safe for that purpose. He could not be held to watchfulness and precautions made necessary by the negligence of defendant, and growing out of a danger, for which the appellant was responsible and of which he had no knowledge. (*Himrod Coal Co.* v. *Clark*, 197 Ill. 514).

*Fourth*—The appellant invokes the doctrine of assumed risk, and claims that the appellee assumed the risk of injury from the proximity of this telegraph pole by continuing in the employment of the appellant. It is true that, when a servant enters into a contract of hire with the master, he assumes the natural and ordinary risks of the business in which he engages, that is to say, he assumes all the risks ordinarily incident to the em-

ployment, and is presumed to have contracted with reference to such risks. (*Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242; *Consolidated Coal Co.* v. *Haenni,* 146 id. 614). This assumption of risk by the employe has been held to arise out of contract. (*Chicago and Eastern Illinois Railroad Co.* v. *Heerey,* 203 Ill. 492). The servant does not assume extraordinary risks, or risks not necessarily incidental to his employment, unless such risks are known to him, and he voluntarily continues in the employment after such knowledge. Upon this subject we concur in the following language used by the Appellate Court in their opinion: "In this case the proximity of the tele-graph pole to the track was a highly dangerous obstruction. * * * It may not be contended that the danger from this obstruction was incidental to the business, and a risk assumed by the plaintiff, unless it is shown by the evidence that the plaintiff knew and understood the danger, to which he was exposed. Whether he had such knowledge, and, as a consequence, whether he assumed the risk, was a question of fact, which the jury found adversely to the defendant." In *McCormick Machine Co.* v. *Burandt,* 136 Ill. 170, it was held that an employe assumes the ordinary perils of the work, in which he is engaged, provided he knew of the dangers, or by the exercise of ordinary care might have known of them.

In *Chicago and Alton Railroad Co.* v. *Stevens,* 189 Ill. 226, it was held that knowledge of the danger from the close proximity of a coal chute to the tracks is not necessarily, as a matter of law, chargeable to an employe from the mere facts, that he had frequently passed the chute, that his train had stopped there twice or more for coal, and that there was a rule of the company, requiring employes to descend ladders of freight cars on the opposite side from such structures; and, in the latter case, we said (p. 231): "The material consideration is, did the employe have knowledge of the danger, or was he, under all the facts and circumstances of the case, chargeable

with knowledge of such danger? And this is necessarily a question of fact to be determined from the proofs. No presumption of such knowledge can be indulged. If it be conceded that there was evidence before the jury, in this case, from which they might reasonably have found that deceased knew or ought to have known of the dangerous proximity of the structure to the ladders upon freight cars, still, it cannot, from that evidence, be said that he was chargeable with such knowledge, as a matter of law."

In *Chicago and Alton Railroad Co.* v. *Johnson*, 116 Ill. 206, it was held that the law does not require that a brakeman upon a freight train shall absolutely know all of the defects of construction and all the obstructions there may be along the line of railroad, and that he shall neglect the performance of his duties, as a brakeman, to be on the constant lookout for such obstructions and structures, which may be dangerous. The risks, assumed by a servant, are such only as cannot be obviated by the master's employment of reasonable measures of precaution. (*Chicago and Grand Trunk Railway Co.* v. *Spurney, supra*).

Whether or not the appellee assumed the risk in question was a matter to be determined by the jury, and the jury have found that the plaintiff did not assume the risk. The instructions asked by the appellant and given for the appellant left it to the jury to determine this question.

*Fifth*—The appellant complains of the rulings of the trial court in regard to the instructions. It is said that the trial court erred in giving to the jury the first and second instructions which were given for the appellee. The first instruction told the jury that, if they believe from the preponderance of the evidence that the plaintiff, while in the exercise of due care and caution for his own safety, was injured by and in consequence of the negligence of the defendant, as charged in the declaration, then the jury should find the defendant guilty. The

objection made to this instruction is the use of the words, "as charged in the declaration." Instructions of this character have been approved by this court, and it is not necessary to repeat the views of the court upon this question. (*Chicago and Alton Railroad Co.* v. *Harrington,* 192 Ill. 9.) The objection made to this instruction in-. volves the same considerations, which have been already discussed in connection with the subject of variance; and what is there said disposes of the complaint made against the first instruction given for appellee.

The objection, made to the second instruction given for the appellee, is based upon the fact that the instruction contains the following words: "The jury will find the defendant guilty and assess the plaintiff's damages, if any, in such amount as they may believe from the preponderance of the evidence he has sustained." It is said that this instruction left it to the discretion of the jury to impose whatever damages they might choose, even to the extent of allowing punitive damages, and that the jury were not informed by the instruction what the proper elements of damage were, which they were entitled to consider in arriving at their verdict. The instruction authorizes the jury to award such damages as the appellee "sustained." This was correct under the ruling of this court in *Waldron* v. *Marcier,* 82 Ill. 550. The instruction authorized the jury to find the amount of damages "from the preponderance of the evidence." This was correct under the rule announced by this court in *City of Freeport* v. *Isbell,* 83 Ill. 440. If the instruction had permitted the jury to allow such damages as they believed the appellee was entitled to, without reference to the amount of damages which appellee had "sustained," and without relying upon the "evidence" to determine the amount of the damages, it would have been incorrect. (*Muren Coal and Ice Co.* v. *Howell,* 204 Ill. 515).

But the third instruction given for the appellee, read in connection with the second, cured whatever defect

there may have been in the second instruction, because the third instruction directed the attention of the jury to the elements constituting the damage, which they were to take into consideration. That instruction told the jury that they must assess the appellee's damages at such sum as the evidence might show he had actually sustained as the direct or proximate result of such injury, taking into consideration his loss of time, his pain and suffering, his necessary and reasonable expenses in being cured or attempting to be cured, and also the question whether or not his injuries were permanent, etc.

Appellant complains of the refusal of the court to give the second instruction asked by it. This instruction relates to the question of assumed risk, and whether its refusal was erroneous or not, appellant could have suffered no injury thereby, because its substance was embodied in instructions, which were given for appellant and at its request. The court gave for the appellant the following instruction:

"The court instructs the jury that, before the plaintiff can recover in this case, he must prove (1) that the defendant maintained or permitted to exist in its railroad yards in the city of Alton, a telegraph pole, which was not placed a sufficient distance from the switch track in said yard, and that the proximity of said pole to said track made or rendered the place a dangerous one for persons operating cars in said yard; (2) that the defendant had notice or knowledge of such dangerous situation, or by the exercise of ordinary care could have known of the same; (3) that the plaintiff himself did not know of the danger, and by the exercise of ordinary care could not have known the same. Now if you believe from the evidence that the plaintiff did know of the danger by reason of the closeness or nearness of said telegraph pole to said switch track, or that by the exercise of due care he could have known of the danger of working in said yard at the time of his injury, and continued to

work and remained at his work without notifying the defendant of such danger, and without any promise on the part of the defendant to remove such danger, then the plaintiff cannot recover and you should find the defendant not guilty."

In addition to the foregoing instruction, the court gave to the jury another instruction at the request of the appellant which was modified in an immaterial respect, in which the jury were instructed as follows:

"If the jury believe from the evidence in this case that, while the plaintiff was working as a switchman or brakeman for the defendant, he knew, or by the exercise of ordinary care could have known, of the alleged dangerous condition of the yards in which he was working, and that said telegraph pole was in dangerous proximity to the switch track, and that with such knowledge he continued at his work without notifying the defendant of the danger and without any promise on the part of the defendant to remove it, then the plaintiff assumed the risk of injury thereby, and the jury should find the defendant not guilty."

It will be noted that the instructions above quoted not only left it to the jury to determine whether or not the risk was assumed by the appellee, but they referred it to the jury to determine whether appellant maintained the telegraph pole, or permitted it to exist, in the railroad yard. This instruction interprets the declaration to mean what it has been hereinbefore held to mean, and, therefore, the appellant is estopped from insisting that it was necessary for the appellee to prove, in order to escape the consequences of a variance, that the appellant had erected the telegraph or telephone pole, or had permitted it to be erected. Under the terms of the instruction asked by the appellant, and given for it, it was sufficient if the jury should find that appellant permitted the telegraph or telephone pole to exist in the railroad yards.

After a careful examination of the record, we find no error, which would justify us in reversing the judgment. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*