# Illinois Central Railroad Company v. Esther Fitzpatrick, Administratrix.

## Gen. No. 12,365.

1. SAFE PLACE TO WORK—*servant may assume that master has furnished.* A servant sent by his master to work at a particular place may act on the presumption that such master has exercised reasonable care in making such place reasonably safe.

2. CONTRIBUTORY NEGLIGENCE—*how question of, determined.*
Whether a person who has lost his life through the alleged negli-
gence of the defendant was himself guilty of contributory negligence
is, where the evidence is conflicting, a question for the jury to de-
termine under proper instructions from the court.

Action on the case for death caused by alleged wrongful act. Ap-
peal from the Superior Court of Cook County; the Hon. ARTHUR H.
CHETLAIN, Judge, presiding. Heard in this court at the March term,
1905. Affirmed. Opinion filed March 15, 1906.

W. A. HOWETT, for appellant; J. G. DRENNAN, of coun-
sel.

HUMMER, MURPHY & McDONALD, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of
the court.

Appellee, as administratrix of James T. Fitzpatrick, de-
ceased, recovered judgment against appellant for $5,000 for
causing the death of her said intestate, by its negligence.
The suit is for the benefit of the next of kin of the intestate.
The case was tried on the declaration, consisting of two
counts, to which the appellant pleaded the general issue.
No question is raised as to the sufficiency of the declaration,
or of variance. The facts are substantially as follows:
Near to 74th street, an east and west street in the city of
Chicago, and next east of and adjoining the right of way of
appellant, there is a foundry belonging to the Skein and
Axel Company, which the evidence shows is inclosed by a
fence. A switch runs from the main track of appellant into
the south part of the yards of the Skein and Axel Com-
pany, entering the yards through a gate about sixty feet
south of 74th street. The evidence tends to prove that this
gate was generally kept locked, though sometimes it was
open, and that when appellant's switching crew had occa-
sion to enter the yard with an engine, they had to procure the
gate key from the foundry company. There were two tracks
inside the foundry yard, the one in question in the case
running north from the entrance gate, and parallel with the

main track of appellant. The evidence tends to prove that the foundry people owned the tracks in the foundry yard, but it does not appear from the evidence who constructed the tracks. The evidence tends to prove, without contradiction, that appellant repaired the inclosed tracks at different times, and that it sent its bills for the same to the foundry company. Next east of the north and south track in the yard, and distant from the track from 20 to 24 inches, is an embankment about 4 feet 6 inches in height. This embankment was constructed by driving posts, about 4 by 4 inches in size, into the ground, nailing boards from post to post in the inside of the posts and filling in dirt. The embankment was used for unloading scrap and pig iron on for use in the foundry, and at the time of the accident pig and scrap iron were piled on the embankment. At one place in the embankment one of the posts had been forced out, so that it leaned toward the track at an angle of about 45 degrees. The distance between the top of this leaning post and the body of a car standing on the track opposite it is variously estimated by the witnesses. One witness says 6 inches, another 6 or 8 inches, another 8 or 9 inches. Brennan, foreman of the crew hereinafter mentioned, testified, without contradiction, that the car which caught the deceased had a platform on the end of it, and a sill that projected about 1 or 2 inches farther than the side of the car, and a staple driven into the end of the car which extended out 4 inches and to within 4 or 5 inches of the leaning post.

The appellant had been using the inclosed track for five years next before the accident, taking in and bringing out cars, and during that time the condition of the track and embankment was the same as at the time of the accident. The deceased was 22 years old, about 5 feet in height, weighed about 150 pounds, and was healthy and strong. From the time he was 16 until he was about 21 years of age, he was in the employ of the Chicago, Burlington & Quincy Railroad Company as a telegraph operator. Subsequently, he was employed in the same capacity by appellant. About two weeks prior to July 2, 1902, he was employed by appel-

lant as a switchman, and two days before the accident he was assigned to a switching crew composed of John Brennan, foreman; Mike Huber, locomotive engineer; George Edmunds, fireman, and John Lunney and the deceased, switchmen. July 2, 1902, this crew went to the foundry yards. Before the engine entered the yard, Brennan, the foreman of the crew, told the deceased that they wanted to take out all empty cars. Huber, the engineer, witness for appellant, testified that he went in light, and inside the gate, and before the embankment was reached they coupled onto two cars; that then the deceased walked north on the track, between the track and the embankment, about 50 feet, to couple onto a gondola car, and was then 18 or 20 feet south of the leaning post, and attempted to make the coupling between the gondola car and the car next south of it, but missed the coupling, and then gave him, the engineer, a signal to come ahead, which he did. When the deceased went in between the cars the second time, to make the coupling, he was 10 or 12 feet from the leaning post and the train was moving north between 2 and 4 miles per hour, and when he made the coupling, and stepped out from between the cars, he came in contact with the leaning post. Huber testifies that the corner of the car caught him. Brennan testified that "when the cars came together, he stepped out from between them and came in contact with the leaning post, and the corner of the car caught him between it and the post and turned him right around," that "he was caught between the the post and the car and crushed in the breast." He died as a result of his injuries in about four hours from the time of the accident. The evidence will be further referred to in connection with appellant's contentions.

Appellant's counsel contends that the deceased was guilty of contributory negligence which precludes recovery; that the part of the sidetrack within the inclosure did not belong to appellant and therefore it was under no obligation to repair it, and that certain instructions, given by appellee's request, are erroneous.

The evidence tends to prove that it was light at the time

of the accident, between 4 and 5 o'clock p. m., and that the view of one walking north, between the track and the embankment, which was the proper place to walk, was unobstructed, and it is contended that had the deceased exercised ordinary care he would have seen the leaning post and could have avoided contact with it. The deceased had been with the crew only two days, and the evidence tends to prove that he had never been in the foundry yard before the day of the accident. Foreman Brennan testified: "He never was on that track before that I know of." Lunney, switchman, testified: "So far as I know Fitzpatrick had not been in there before." There is no evidence that the deceased ever had been inside the foundry yard before the occurrence of the accident. If he had been, it is a legitimate presumption that appellant would have so proved. Neither is there any evidence that the deceased had been informed of the leaning post. Having been sent by his employer to work in that place, he was not required to make an examination for defects, but had a right to act on the presumption that appellant had exercised reasonable care in making the place where he was required to work reasonably safe. Himrod Coal Co. v. Clark, 197 Ill., 514, 518; Ill. Terminal R'd Co. v. Thompson, 210 ib., 226, 236.

The evidence shows that the deceased had to stand with his face toward the engineer and his back toward the post, to signal the engineer to come ahead, when a coupling was to be made, and so standing he could not see the post, and that after a coupling was made he had to come out from between the coupled cars. Brennan was questioned and answered thus:

Q. "And this man who was down there between the cars and this bank, could see it (the post) plainer than any one else could see it; that is, wasn't he in better position to see it, if he was down between the cars?"

A. "He could see one way when he was working."

Q. "He could see both ways, if he was looking?"

A. "Not if he was attending to his duties."

Q. "Well, a man, at a glance, he could see one way as well as another, couldn't he?"

A. "The man got caught there; that is all I know about it. He could not look both ways, toward the engine to give signs and look backward too."

Q. "If a post was within three feet of a man, there was nothing to have prevented him from seeing this, was there?"

A. "He could not possibly see that post when he got hurt."

Q. "What was there to prevent him from seeing it?"

A. "Because he was holding the lever up, that was attached to the gondola, and when the car struck, they backed up and caught him between the car and the post."

When the train first struck the gondola, as the deceased was attempting to make the coupling which he missed, it drove the gondola car 8 or 10 feet north, and the deceased walked along with it. Huber, the engineer, testified that the time he stepped out in front of the post, was the first time he stepped out from between the cars after he missed the coupling, which, if true, indicates that he followed up behind the gondola car, when it was driven forward by the train the first time, in which case he could not have seen the post after the first impact.

Counsel for appellant cites and comments on C., M. & St. P. Ry. Co. v. Halsey, 133 Ill., 248, and Weeks v. C. & N. W. Ry. Co., 198 ib., 551, in support of the contention that the deceased was not exercising ordinary care. The former case was reversed because of an erroneous instruction. In the latter case, the main question seems to have been whether the finding of facts by the Appellate Court was sufficient. Other cases are cited, which we do not think applicable to the facts in the present case. There can be no question that appellant was guilty of negligence, in continuing to use the track obstructed as it was, and we do not understand counsel as contending the contrary. Whether the deceased was or was not guilty of contributory negligence, was a question for the jury, which was submitted to them by

instructions, and we are satisfied with their finding that he was not.

We regard the contention that appellant could not make the track reasonably safe, because it did not own it, as a very lame excuse. The evidence shows that appellant had repaired the track on several occasions. The sidetrack was for the benefit of the foundry, and there can be no question that the foundry people would have permitted appellant, at any time, to make it safe rather than submit to the alternative of appellant ceasing to operate it. The work to be done was merely to remove the dirt behind the post, straighten the post, and make it firm and secure, and this would have taken a very short time and involved little expense. But, if the foundry people owned the track within the inclosure, this was immaterial. It was incumbent on appellant either to see that it was made reasonably safe, or to cease using it in its unsafe condition. Appellant's counsel substantially admits in his argument that appellant might be liable for negligence in using the track, if defective. In Ill. Terminal R'd Co. v. Thompson, 210 Ill., 226, the plaintiff, Thompson, while climbing a ladder on the side of the car, came in contact with a telegraph pole too close to the track, which the railroad company had allowed to be there for about three years, and suffered injury which resulted in his death. The company defended on the ground that another company owned the land on which the pole was and erected the pole. In respect to this defense the court say: "This is an immaterial consideration. The appellant was in possession of the tracks, and of the yard, and was engaged in the operation of its business in switching cars upon such tracks. It makes no difference whether the appellant company owned the premises in fee, or was in possession of them as a lessee or licensee. The appellee was in the employment of the appellant company, and was engaged in the business of helping it to switch its cars in the yards in question with the means furnished to him by the appellant. It was his duty to climb up the side of the car upon the ladder, which was there, and to ascend to

the top of the car to control the brakes thereon. While he
was engaged in the performance of this duty, it was the
duty of the appellant to furnish him a safe place in which
he could do the work required of him. The evidence tends
to prove that the appellant knowingly permitted the pole to
remain in its position of dangerous nearness to the track."
The evidence showed that Thompson had, while on top of
a car, passed the pole three times, and it was objected by
the railroad company that he was not in the exercise of due
care for his safety when he came in contact with the pole.
But the court said: "The appellee cannot be charged with
contributory negligence, if he did not have notice of the
dangerous proximity of the telegraph pole to the track and
the cars passing upon the track. There is evidence in the
record tending to show that, while the appellee may have
seen these poles, which were erected between the north
and south tracks in the yard; yet that he had no notice of
the fact that the pole, which caused the injury, was not
within a safe distance from the north track and from the
cars which might pass upon the north track. There was
evidence tending to show that this particular pole had swayed
towards the track, so that it was nearer than if it had oc-
cupied a perfectly upright position." This language is ap-
plicable here.

It is certainly not a question of law, on the evidence,
whether the deceased knew of the dangerous proximity to
the track of the leaning post, or whether he was exercising
ordinary care. These questions were for the jury. In C.
& A. R. R. Co. v. Stevens, 189 Ill., 226, the plaintiff, while
descending from the top of the car by a ladder, was injured
by coming in contact with the foot-board of a coal chute,
which extended to within sixteen and one-half inches of the
ladder. He had, while in the service of the company, made
several trips past the coal chute, and his train had stopped
twice at the coal chute, to take in coal. At the time of the
injury he was descending the ladder for the purpose of get-
ting on a flat car, to deliver, by order of his conductor, a
message to the engineer to stop at the next station. The

I. C. R. R. Co. v. Fitzpatrick.

court say: "The fact he was in the performance of a duty which required promptness in reaching the engineer, the facilities afforded him for accomplishing that purpose, the nature of his duties as a brakeman in passing the place, and the fact that he had nothing to do with the use of the coal chute in taking coal when trains stopped there for that purpose, were facts and circumstances proper to be considered by the jury, tending to prove that he did not know and was not chargeable with knowledge of the danger. It is impossible for us to say, upon all this evidence, that he was or was not so chargeable. That was the province of the jury in the first instance, subject only to review by the Appellate Court."

Counsel for appellant says: "I ask the court to note the following instructions given by the trial court, holding that it was negligence of the defendant, Illinois Central, not to go upon the track of the third person or corporation, and put it in repair." No other criticism or comment is made on the instructions or any of them. Then follows instructions 1, 4, 5, 6, 7, 8 and 9, given at appellee's request. Instruction 1 is as follows:'

"The court instructs the jury that if you find from the evidence that the defendant, Illinois Central Railway Company, was at the time of the happening of the accident in question, using the switch track upon which said James T. Fitzpatrick was injured, then the said defendant was bound to exercise the same care to keep the said switch track in a reasonably safe condition for said James T. Fitzpatrick as if said switch belonged to said Illinois Central Railway Company."

We think this instruction might, perhaps, have been more accurately worded. Nevertheless, we are not prepared to say that it is not substantially correct, and cannot hold that the giving it was reversible error.

We find no error in any of the instructions 4, 5, 7, 8 and 9.

The judgment will be affirmed.

*Affirmed.*