(No. 1246—

Dan Perry, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed September 11, 1928.*

*Rehearing denied October 24, 1928, second rehearing denied March 28, 1929.*

GEORGE W. HOGAN, JR., and NOAH GULLETT, for claimant.

OSCAR E. CARLSTROM, Attorney General; FRANK R. EAGLETON, Assistant Attorney General, for respondent.

MR. JUSTICE THOMAS delivered the opinion of the court:

Claimant was employed as an attendant at the Jacksonville State Hospital for the insane, and while so employed, on April 20, 1926, he was attacked and severely beaten by one of the patients. Claimant was taken to the nurses' home in the hospital where he remained under the care of the hospital physicians for about one month and a half. He then went to work again but was unable to perform his duties and finally left the institution. He claims the injury caused him to become deaf in his right ear and permanently impaired the sight of his right eye; that it has affected his nerves and causes him to suffer constant pains in his head, and has so affected him otherwise that he is unable to perform manual labor, and asks for an award of $10,000.00 damages. The Attorney General has filed no plea on behalf of the State and the cause will be tried as though a general traverse of the declaration had been filed.

Before a claimant can be awarded damages against the State he must bring himself within the provisions of some law justifying the award, and unless he does so his claim must fail. In this case claimant was an employee of the State at the time the injury complained of was received. But that fact, alone, does not entitle him to compensation. If the State had been engaged in a business coming within the classes mentioned in section 3 of the Workman's Compensation Act, then his right to compensation would be determined under

the provisions of that law, for section 6 of the act creating the Court of Claims gives this court power to determine the liability of the State for accidental injuries or death suffered in the course of employment by any employee of the State. But such determination must be made in accordance with the rules prescribed in the Workman's Compensation Act. As the care of the insane in a hospital is not one of the classes of business declared to be extra hazardous by section 3 of that act, claimant cannot be awarded compensation under that law though his injury may have arisen out of and in the course of his employment.

The declaration of claimant alleges that on the date of his injury he "was performing his usual and customary duties as an attendant at the Jacksonville State Hospital * * * and as such attendant had charge of what is commonly known and called the detailed gang consisting of nineteen violent patients who were considered the worst patients mentally that were in the said Jacksonville State Hospital." It is apparent from this allegation that claimant was employed to attend and control insane patients at the hospital and that he knew such patients were liable to become violent. His employment was voluntary and when he entered upon his duties as such an attendant he assumed the ordinary perils of the work in which he was engaged. (*McInturf* v. *State,* 5 Ct. Cl. 314; *Neighbors* v. *State,* 5 Ct. Cl. 238; *Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614; *Illinois Terminal R. R. Co.* v. *Thompson,* 210 Ill. 226.) In the *Tompson case, supra,* at page 236, the Supreme Court announces the rule of assumed risk in the following words: "It is true that, when a servant enters into a contract of hire with the master, he assumes the natural and ordinary risks of the business in which he engages, that is to say, he assumes all the risks ordinarily incident to the employment, and is presumed to have contracted with reference to such risks." It is a matter of common knowledge that insane persons are liable to become violent and that their control and management is attended with danger, and one who voluntarily undertakes the duties of their supervision assumes all the risks ordinarily incident to such employment. If the Jacksonville Hospital were a private institution for the care and treatment of the insane, it is manifest claimant could not sustain a cause of action against it

for his injuries. And certainly the State is not obligated where a private institution would not be unless there be some statute imposing such obligation upon it. We have been referred to no such statute and know of none.

Claimant urges, however, that he should be awarded compensation as an act of justice and equity regardless of the principles of law involved. The jurisdiction of this court is fixed by law and it has no powers except those given by the Act creating it. Section six of that act provides: ''The Court of Claims shall have power to hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, *ex contractu* and *ex delicto,* which the State, as a sovereign commonwealth, should, in equity and good conscience discharge and pay.'' It is obvious from the language of this statute that no claim against the State can be allowed by this Court unless there is either a legal or equitable obligation of the State to pay it. If there is either a legal or equitable obligation resting upon the State to pay a claim, then justice requires that the State should pay it.

What then is ''justice'' and ''equity''? It has been said that ''justice consists simply in letting every one enjoy the rights which he has acquired in virtue of the laws.'' In a judicial sense, justice is nothing more or less than exact conformity to some obligatory law; and all human actions are either just or unjust as they are in conformity to or in opposition to law. (*Borden* v. *State,* 11 Ark. 519.) In other words, justice is merely giving to one that to which he is entitled by law. And unless he can point to some law giving him the right or privilege claimed, he cannot insist on it as an act of justice. Neither can he invoke the aid of equity to secure a right to which he is not entitled under some law. ''A court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law, nor, where there is no legal liability, can equity create one.'' (*10 R. C. L.,* sec. 132.) Equity is not the chancellor's sense of moral right, or his sense of what is just and equal. It is a complex system of established law. (*Savings Inst.* v. *Makin,* 23 Me. (10 Shep.) 360.)

Claimant's idea seems to be that equity as used in this statute is nothing more or less than the power of the court to decide each case according to a high standard of morality and abstract right, regardless of the law. Such a construc

tion would leave this Court with practically no limitation upon its power to render judgments against the State. It is a principle of universal application that a sovereign state cannot be sued in its own courts without its consent. (*In re City of Mt. Vernon*, 147 Ill. 359.) The State may consent to be sued, and if it does the suit can only be brought in the forum prescribed and for the causes set forth in the statute. Statutes permitting suits against the State, being in derogation of its sovereignity, must be strictly construed. (*25 R. C. L.*, sec. 52.) When the legislature created this court and clothed it with power to hear claims against the State we do not think it thereby intended to waive the right of the State to interpose any legal or equitable defense it might have to the demands of claimants. Such a construction would give this Court the power to hold the State liable for the malfeasance and misfeasance of its officers, the torts of all its agents, and all damages caused in the exercise of its governmental and police powers. Certainly the Legislature did not intend such a radical and far reaching change in the law by the use of the term "equity" in the statute fixing the powers of this court.

Claimant's demand, not being based upon any legal or equitable right, cannot be allowed, however strongly it may appeal to the sympathy of the Court. The Court can only enforce the law as it is, it has no power to change it. The claim will therefore be denied and the cause dismissed.

On October 24, 1928, upon petition for rehearing the following additional opinion was filed:

Claimant has filed a petition for a re-hearing on the grounds that under sub-paragraphs 7½ and 8 of section 3 of the Workmen's Compensation Act he is entitled to an award. In his original brief claimant says that, under the repeated decisions of this court, he fully realizes the facts in this case do not make the State liable for his injury, and basis his right to an award on the principle of justice and equity. He now urges the foregoing paragraphs automatically bring the State under the provisions of the Workmen's Compensation Act, and entitle him to be compensated by the State for his injury.

The Workmen's Compensation Act automatically applies to the State only when it is engaged in any of the enterprises

or businesses enumerated in section 3 of that Act and therein declared to be extra hazardous. Under the provisions of sub-paragraph 8 nothing contained in the Act "shall be construed to apply to any work, employment or operations done, had or conducted by farmers and others engaged in farming, till-age of the soil, or stock raising, or to those who rent, demise or lease land for any such purposes, or to any one in their employ or to any work done on a farm or country place, no matter what kind of work or service is being done or ren-dered." Claimant was injured while engaged in baling straw on one of the farms of the Jacksonville State Hospital. In as much as the provisions of the Workmen's Compensation Act do not apply to one engaged in farming or to any kind of work or service being done on a farm it follows that claimant cannot recover under the provisions of that Act.

The petition for a re-hearing is therefore denied.

On March 28, 1929, upon a second petition for rehearing the following additional opinion was filed:

On September 11, 1928, the opinion denying an award and dismissing the cause was filed. Under Rule 30 of this court claimant filed his petition for a rehearing. That peti-tion was duly considered by the court and the rehearing denied by an order filed October 24, 1928. On February 1, 1929, claimant filed a second petition for a rehearing and for leave to take additional testimony. This petition was not filed for over 3 months after the first petition was denied. Petitions for rehearing must be filed in accordance with the rules of the court. These rules of the court are adopted for the proper expedition of the business of the court and must be complied with. (*Wolfe* v. *State,* 5 C. C. 18; *Corris* v. *State,* 5 C. C. 76; *Lewson* v. *State,* 5 C. C. 80). They have the force of law and are obligatory upon the court itself as well as upon the parties to causes pending before it. The court has no discretion to apply them, or not, according to its con-venience. (*Lancaster* v. *Wauhegan & S. W. Ry. Co.,* 132 Ill 492). Rule 30, which relates to rehearings, provides that such petitions shall be filed within 25 days after the filing of the opinion. The second petition in this case was not filed for about 100 days after the last opinion was filed. It cannot, therefore, be considered, and is denied.