The Consolidated Coal Company of St. Louis

*v.*

Edward Lundak.

*Opinion filed April 16, 1902—Rehearing denied June 10, 1902.*

1. Evidence—*what tends to show negligence in placing props in mine.* That a prop was so placed in a mine as to fall by itself or to be knocked down by a car passing upon the track is evidence tending to prove a want of reasonable care by the company.

2. Mines—*what not such rules as are contemplated by section 32 of Mining act of 1899.* Alleged rules of a mining company, consisting of notices and statements to the effect that the business is dangerous and every employee must take constant care to avoid injury; that persons accepting employment do so with notice that the danger from falling roof and coal is one of the usual risks; that every place in the mine is dangerous, and that it is the duty of the employee to ascertain and avoid injury, etc., are not such rules as are contemplated by section 32 of the Mining act of 1899, (Laws of 1899, p. 324,) and, in so far as they are claimed to operate as a contract against the negligence and dereliction of the company, they are void as against public policy.

*Consolidated Coal Co.* v. *Lundak,* 97 Ill. App. 109, affirmed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. William Hartzell, Judge, presiding.

Charles W. Thomas, for appellant.

Burton & Wheeler, (W. E. Hadley, of counsel,) for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Appellee was employed as driver of a mule hauling loaded cars along a track in appellant's mine from the place where the coal was mined to the pit and returning with empty cars. He was injured by the fall of a section of slate and clod mixed with rock, from the roof of the mine, upon the track along which he was driving the

mule, and brought this suit to recover the resulting damages. He obtained a verdict and judgment, and the judgment was affirmed by the Appellate Court.

The argument is directed to the alleged error of the trial court in refusing to direct a verdict for the defendant on the ground that there was no evidence tending to prove any of the allegations of negligence contained in any count of the declaration. It is not contended that there was any evidence tending to prove a want of care on the part of the plaintiff, or that the evidence did not establish the exercise of proper care by him. There was no evidence tending to show that he assumed the risk of the manner in which the roof was supported, or that he was aware of the danger, or had any reason to suspect it. The declaration charged a neglect of the duty imposed by law upon the defendant to furnish plaintiff with a reasonably safe place in which to work, by failing to reasonably secure the roof of the mine by props, crossbars or timbers. The evidence on that question was substantially as follows: There was a permanent track laid on cross-ties up to about fourteen feet from the face of the coal that was being mined. From that point to the face of the coal there was a temporary track, consisting of T rails laid on their sides on the bottom of the mine with no ties under them. There was a down grade from the permanent track to the face of the coal, and at the connection the temporary track was about an inch and a half below the permanent one. The hanging piece of slate and clod that fell was near the junction of the two tracks, and a witness said that it was over the permanent track, two or three feet from its end. The day before the accident, defendant's timberman, who was employed to secure the roof, had his attention called to the dangerous condition at that place and said that he could put a bar up. A loader at the face of the coal asked him not to put it up until after a shot had been fired, which, he said, would disturb it, and the timberman left it in that

condition, trusting to the loader to secure it afterward. The timberman did not return to the place or give any further attention to the matter, and was not at the mine the following day when the accident happened. On that morning the loader put up a cross-piece under the hanging slate across the track and supported it by a post at each end. He was an experienced miner but was not employed for that kind of work, and he called a machine runner to see if he thought the timbers were all right. They concluded that it was safe, and left it. Plaintiff began work about seven o'clock in the morning, and had made six trips before he was hurt, at about eleven o'clock. When he was injured he started from the face of the coal, walking close at the side of the mule. The mule had sore shoulders, and when the car struck the sudden rise from the temporary to the permanent track, or at about that place, the sore shoulders were hurt and the mule flinched and balked, and plaintiff stepped back to the car and tried to hold it and assist the mule. The car ran back, and in some way a prop was knocked down, letting down the cross-bar, and the slate, weighing several tons, fell on the plaintiff between the mule and the car, cutting the chain by which the car was drawn and injuring plaintiff. The fact that the slate fell between the mule and the car shows that the car had reached the post, wherever it may have been located with reference to the end of the permanent track. There was evidence that the props were usually set about two feet from the rail, and that the prop knocked down was from a foot to a foot and a half from the rail. The car extended outside of the rail and was old, and had a play of about six inches between the axle and the wheels. There was no direct evidence as to how the prop was knocked down, the only testimony on that subject being that of plaintiff, which was hearsay, and was stricken out by the court.

We think it apparent that the ruling of the court was right in refusing to direct a verdict for the defendant.

Either the prop fell down of itself or was knocked down by the car while on the track, and setting a prop in such a manner that either would occur was evidence tending to prove a want of reasonable care on the part of the defendant. The inference most favorable to the defendant is that the prop was knocked down by the car, owing to the play between the axle and wheels and the lurching of the car when the mule balked.

It is also argued that the rules of the company offered in evidence exempted it from liability to the plaintiff. Section 32 of the Mining law of 1899 is as follows: "It shall be the duty of every operator to post, on the engine house and at the pit top of his mine, in such manner that the employees in the mine can read them, rules not inconsistent with this act, plainly printed in the English language, which shall govern all persons working in the mine. And the posting of such notice as provided shall charge all employees of such mine with legal notice of the contents thereof." (Laws of 1899, p. 324.) By that section it is made the duty of the operator to promulgate and post rules for the conduct of his business and the government of his employees. The duty of the operator to establish and post the rules and the duty of the miner to obey them are reciprocal. What counsel calls rules, which were offered in evidence in this case, are merely notices and statements designed to relieve the defendant from its duties and liabilities to its employees. With one exception they are not in the nature of rules contemplated by the statute as to the manner of conducting the business nor regulating the employees. They consist of a notice that the business is dangerous and every employee must take constant care to avoid injury; that persons accepting employment do it with full notice that the danger to injury from falling roof and coal is one of the usual risks of the service; that the manager does not assume that the place to which an employee is ordered is not dangerous, but every place in the mine is

dangerous, and the duty of ascertaining the danger and avoiding it is on the employee, and that no employee is authorized to incur any risks relying on the timberman, and defendant, by employing timbermen, does not agree to secure the roof of the mine. They are nothing but an attempt to make laws under the guise of rules, and so far as they are claimed to operate as a contract against the negligence and dereliction of the defendant they are void, as against public policy. (14 Am. & Eng. Ency. of Law, 910.) The eleventh rule is the only one that purports to govern the duties of employees, and it provides that the timberman shall have no duty except to re-timber places in the mine which have once been properly timbered and secured, and that in no case shall he assume the duty of securing the roof except as therein provided, unless expressly directed to do so by the mine manager. The fact that it provides the timberman shall not perform a duty resting upon the defendant furnishes no exemption to it. It was the duty of defendant to have the roof over the track where plaintiff was required to work properly timbered and secured, and we apprehend it would scarcely be claimed that defendant could make a rule that it would not perform the duty or furnish any one to do it. It was the duty of the defendant, whether discharged through the agency of the timberman or some other person.

In the course of the argument as to the propriety of directing a verdict, it is incidentally said that the second instruction given at the request of the plaintiff is erroneous because it ignores a provision of the statute which relieves the operator of the coal mine from securing the roof at the place where coal is being mined, and only requires him to provide props, caps and timber to the miner to secure the place where he is working. The dangerous roof in this instance was not where miners were working, but was where they were in no danger from it. It was

over the track, where the miners were not called upon to put up props, and the instruction was right.

No other error is alleged, and the judgment of the Appellate Court is affirmed.           *Judgment affirmed.*