JOHN F. DEVINE, Admr., Defendant in Error, vs. FRED-ERIC A. DELANO et al. Receivers, Plaintiffs in Error.

*Opinion filed February 16, 1916.*

1. PLEADING—*when proof of one of two charges of negligence in one count is sufficient.* Proof of either one of two charges of negligence, though joined or coupled together in one count, will be sufficient to warrant a recovery, provided the negligence is shown to be the proximate cause of the injury.

2. TRIAL—*when verdict should not be directed.* If there is in the record any evidence from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find that the material averments of the declaration have been proved, a verdict should not be directed.

3. RAILROADS—*when a railroad company is negligent in operating a train past an obstruction too near the track.* A railroad company is guilty of actionable negligence to its employees in operating a train, either upon its track or upon a track of another company, past an obstruction located dangerously near the track, provided the operating company knew, or by the exercise of ordinary care could have known, of such dangerous obstruction.

4. SAME—*what is not necessary to render a railroad company liable though an obstruction near track is on private property.* A railroad company may be negligent in operating a train past an obstruction too near the track although the obstruction is not the property of the company and is not located on its right of way, and no warning, by the owner, of the existence of the obstruction is necessary if the company, by the exercise of reasonable care, could have known of its existence.

5. SAME—*duty of railroad company to see to removal of unnecessary dangers.* If the operation of switching cars to and from the grounds of a manufacturing company is rendered unnecessarily dangerous by reason of conditions existing on such grounds, it is the duty of the company to require the removal of such dangerous conditions or refuse to operate its trains until such conditions are removed.

6. SAME—*what is sufficient to show knowledge of dangerous proximity of post to the track.* A railroad company is charged with knowledge of the dangerous proximity of a post to the track on the premises of a manufacturing company where the evidence shows that the post and the track had been in the same relative positions for at least a year and a half prior to the accident, that

the company was accustomed daily to operate its trains along the track and past the post, and that it was the only railroad operating its trains upon such track.

7. SAME—*whether deceased was warned of dangerous obstruction is a question for the jury.* Whether the deceased employee was warned of the dangerous proximity of a post to the track by his receipt of a non-clearance list or by the conductor of the train is a question for the jury under the evidence on such matters.

8. SAME—*whether company's negligence was proximate cause of injury is question for the jury.* Whether a railroad company's negligence in operating a train past an obstruction too near the track was the proximate cause of the deceased's injury and death is a question of fact to be determined by the jury if there is any evidence fairly tending to establish that fact.

9. SAME—*when a verdict may be based on circumstantial evidence.* If there were no eye-witnesses to the accident resulting in the death of the plaintiff's intestate, a verdict for the plaintiff may be based upon proof of such facts and circumstances as will, according to usual and common experience, raise an inference of other facts and circumstances sufficient to warrant the jury in returning such verdict.

10. SAME—*railroad receivers may reject the Workmen's Compensation act without special order of court.* Receivers of a railroad acting under a general order of a Federal court authorizing them to manage, maintain and operate the road have authority to reject the Illinois Workmen's Compensation act without first obtaining a special order of court for that purpose.

11. SAME—*extent of authority of a United States district court in railroad receivership action.* The court in the principal railroad receivership action has general power and authority over the entire railroad system, even though parts of it are not situated within the district in which the court sits, and this authority will be recognized in other jurisdictions on the principles of comity and public policy.

12. MASTER AND SERVANT—*effect where master rejects Workmen's Compensation act of 1911.* Under the Workmen's Compensation act of 1911 an employer who elects not to come under the provisions of such act cannot escape liability for injuries sustained by an employee on the ground of assumption of the risk or contributory negligence of the employee.

13. SAME—*extent to which agreement by employee to assume risk is void.* A clause in an application for employment by which the employee assumes the risk of the dangers of the business is void and contrary to public policy in so far as it may purport to

bind the employee to assume the risk of dangers occasioned by the negligence of the employer of which the employee has no notice.

14. EVIDENCE—*circumstantial evidence defined.* Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.

15. SAME—*when testimony as to average earnings of switchmen is not prejudicial.* Permitting a fireman to testify as to the average earnings of switchmen is not prejudicial where such testimony corresponds with competent evidence as to the exact earnings of the deceased switchman.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JOHN H. FORNOFF, Judge, presiding.

ZANE, MORSE & McKINNEY, (JAMES L. MINNIS, of counsel,) for plaintiffs in error.

JAMES C. McSHANE, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action on the case brought in the circuit court of Cook county to recover damages for the death of the defendant in error's intestate. On a trial before a jury a verdict was returned in favor of the defendant in error and judgment was entered on the verdict. The cause was brought directly to this court because the validity of the Workmen's Compensation act of 1911 was questioned by plaintiffs in error, our decision on the constitutionality of that act not having been published at the time this writ of error was sued out.

The original declaration contained two counts. The second count set out that the Wabash Railroad Company, of which plaintiffs in error were receivers, operated a railroad extending from Chicago into and through Decatur, Illinois, and that plaintiff's intestate was employed by them as a

switchman, working at Decatur; that near a track leading from said railroad into a large manufacturing plant, and over which plaintiffs in error switched trains between said railroad and said plant by means of a switch engine and switching crew, stood a post immediately alongside of the track and at the entrance of the plant which was so close to the track that it was liable to brush or knock a switchman from the side of an engine or train passing; that the track was thereby rendered unsafe and unsuitable for switching purposes and exposed those engaged therein to great and unusual danger; that the receivers knew, or could have known by the exercise of ordinary care, these facts, but the deceased, Bartlett, through no want of ordinary care on his part, did not know of the dangerous proximity of the post and track or of the danger therefrom; that the receivers knew, or by the exercise of ordinary care could have known, that the deceased was uninformed of the dangerous proximity of the post and track and of the danger therefrom; that the receivers wrongfully and negligently required Bartlett, as switchman, to switch with an engine and cars then operating along said track past said post, and that while Bartlett, in the discharge of his duties as switchman, in the exercise of ordinary care, was riding upon the side of said train so operated past said post, he was thereby knocked from the said train upon the ground and sustained serious bodily injuries, from which he died. The first count, as amended, set out substantially the same facts, and further alleged that the said railroad extended through the State of Missouri and other States, and that the receivers were engaged as common carriers in inter-State commerce. At the close of the trial it was stipulated that the plaintiffs in error were not engaged, at the time of the accident, in inter-State commerce, and this eliminated the first count. A few months before the trial defendant in error filed an additional count, in which were set out facts substantially the same as in the second count but containing the additional

averment that plaintiffs in error, before the death of Bart-
lett, were regularly engaged in, and deceased as their ser-
vant was regularly employed in, the kind of business and
work to which the Workmen's Compensation act of 1911
applied, but that plaintiffs in error had elected, prior to the
death of Bartlett, not to be governed by said act. The case
was tried on said second count and this additional count,
and the verdict must be sustained, if at all, under one or
both of these counts.

Defendant in error's intestate, Cyrus E. Bartlett, was
killed on October 23, 1912, at Decatur, Illinois, on or near
the tracks of the Wabash Railroad Company, then being
operated by plaintiffs in error, its duly appointed receivers.
Bartlett lost his life somewhere near a gateway opening on
the tracks of said Wabash Railroad Company into the plant
of the A. E. Staley Company, a starch manufacturing es-
tablishment located in Decatur. This gateway was near the
northeastern corner of the factory grounds. Just north of
this plant are situated numerous tracks of the said railroad
company, running in an easterly and western direction. A
switch track left the main tracks a little distance northeast
of said starch works and a short distance beyond the main
tracks was itself divided into two tracks, which, continuing
in slightly diverging lines, ran in a slightly southwesterly
direction, each through its gateway and onto the grounds of
said A. E. Staley Company. The more northerly of these
two switch tracks was known as the corn track. These two
tracks joined near the western side of the plant. The wit-
nesses, in referring to them, spoke of them as running east
and west, and we shall do the same in this opinion, though,
as a matter of fact, they ran a little north of east and south
of west. The gateway stood within the property lines of
the starch works. Each gate had two wings. The southerly
section or wing of the southerly gate was hinged to the
post complained of, and swung over the southerly half of
the southerly track. The northerly wing of that gate was

hinged on a post standing in the clear space between the north and south switch tracks. The clearance or space between the side of an ordinary car and the southerly end of the gate where it was hinged to the post complained of, when the gate was opened, was about eight or ten inches. The gates and track had been in position for a year or two. Bartlett had been working for the receivers three or four days, with the same engine and the same crew. He was apparently an experienced switchman. The switching crew consisted of five men: Davis, the engineer; Jackson, the fireman; Barnett, the foreman, sometimes called conductor, and Northway and Bartlett, switchmen. This switching crew had been in and out of the starch works several times during the three or four days Bartlett worked for the receivers. On the day in question the switching crew had come into the plant and placed some cars of coal, and at the time of the accident their train was running east along the south switch track. The engine was backing, the tender being towards the east and the front end of the engine towards the west. One or two cars west of the engine were being pulled out and two empty coal cars pushed out east of the tender, these latter forming the head of the train. On the top of the fence around the plant two or more strands of wire were stretched. The ends and sides of the coal cars extended up about the height of the topmost wire. While the train was thus moving east the engineer was on the north side of the cab and the fireman on the south side. Switchman Northway was standing on the north side of the foot-board on the front or west end of the engine. Barnett, the foreman, and Bartlett were on the east end of the most easterly car, facing east,—the direction in which the train was moving. The evidence shows that at this time there was nothing to obstruct Bartlett's view of the gateway and post. The part of the car upon which they were standing, called in the evidence the "sill," projected six inches or more beyond the end of the coal

car and was about four feet above the rails. Barnett was on the north side of the sill and Bartlett on the south. Between twenty and one hundred and fifty feet west of the gate, remarking to Bartlett that they would do some switching on the corn track before going to dinner, Barnett dropped off the car on the north side of the train to plan the handling of the switching on the corn track. This was the last that Bartlett was seen alive. At this time Bartlett was standing with both arms thrown back of him over the end board of the coal car, which came up to about his armpits. Jackson, the fireman, saw Bartlett standing in this position about six hundred feet west of the gates. The next Jackson saw of Bartlett was apparently about opposite the gates, when he saw something being dragged or rolled along the ground by the train some few feet east of the engine cab. He saw, as they passed over this object, that it was a man but did not know it was Bartlett. He notified Davis, the engineer. The train passed completely over the body, went on, and switched back north on the corn track before Jackson or the engineer returned to where the body lay. When Bartlett was found he was lying close to the south rail of the south track, about opposite the east end of the open south wing of the gate. His feet were towards the east and his body doubled up, the head being between the legs. His back was broken. Jackson first saw the body as it was being rolled or dragged, between the gate and the engine cab. Davis, the engineer, did not see it until they had switched back onto the corn track. Jackson testified that after the accident he saw Bartlett's hat lying just inside the fence of the starch works, opposite the post. Davis testified that he saw Bartlett's switchman's club lying somewhere around one of the posts of the gate. Barnett, the foreman, testified that he saw the club lying somewhere near the gate and close to it, but whether inside or out he could not tell; that he saw the hat lying seven or ten feet east of the gate post. There was no testimony as

to any fragments of clothing being caught on the barbed wire at the top of the fence. The foreman testified he did not tell Bartlett to throw the switch in order to run in onto the corn track, but after dropping off the train he gave a sign to Northway, the other switchman, to come in on that track, as Northway passed him riding on the foot-board of the engine. The switch was, in fact, thrown by Northway. It was located about one hundred feet east of the gate post. Northway did not testify, and we infer from the briefs that he was not living at the time of the trial. Barnett testified that it was the duty of Northway to throw this switch, and not Bartlett's, though we conclude from his testimony that it was not any particular man's duty to throw any particular switch. Davis, the engineer, testified that he did not know whose duty it was, while Jackson testified that he thought it was Bartlett's duty. On the side of the coal car on which Bartlett was standing there was a step or stirrup below the body of the car for a man to step on in getting up or down, and also hand-holds. This step was immediately west of the sill or ledge upon which Bartlett was standing. In stepping down from the car a man would step from this stirrup either directly to the ground or first to an oil-box on the car and from thence to the ground. The theory of defendant in error's counsel is that Bartlett had passed around to the side of the car and was using the step to get to the ground for the purpose of throwing the switch on the corn track, when he was struck by the post and knocked to the ground, his death resulting therefrom; while counsel for plaintiffs in error contend that there are no circumstances in the record justifying any conclusion on the part of the court or jury as to how his death was caused.

Plaintiffs in error insist that the Workmen's Compensation act of 1911 is invalid, and that therefore the court erred in submitting the case to the jury on the additional count. This court has held that act constitutional in *Drag-*

*ovich* v. *Iroquois Iron Co.* 269 Ill. 478, *Przykopenski* v. *Citizens' Coal Co.* 270 id. 275, and *Richardson* v. *Sears, Roebuck & Co.* 271 id. 325. We see no reason to change the conclusion on this point reached in those cases.

At the close of defendant in error's case, and again at the close of all the evidence, counsel for plaintiffs in error requested the court to direct a verdict in their favor. This motion was denied. It is here very earnestly insisted that the verdict should have been directed, as there was no proof of the negligence charged in the declaration.

Counsel for defendant in error urges that there were two charges of negligence in each of the two counts of the declaration upon which the case was submitted to the jury: First, in operating the train upon and along the track in question and in requiring the deceased to work upon it when and while the post was in dangerous proximity to the track; and second, in failing to warn the deceased of such dangerous proximity. Counsel argues that the proof of either of these charges would authorize a recovery. Where there are two charges of negligence in the declaration, the rule is that proof of either one of the charges is sufficient to warrant a recovery, provided the negligence is shown to be the proximate cause of the injury; (*Chicago and Grand Trunk Railway Co.* v. *Spurney,* 197 Ill. 471; *Weber Wagon Co.* v. *Kehl,* 139 id. 644;) and this even though the two charges of negligence are joined or coupled together, as they are in each count of this case. Counsel for plaintiffs in error contend that both of these charges of negligence must be proved in order to authorize a recovery under either count.

This court has held that a railroad company is guilty of actionable negligence to its employees in operating a train, either upon its own track or upon a track belonging to another railroad company, past an obstruction located dangerously near to the track, provided the operating company knew, or by the exercise of ordinary care could have

known, of such dangerous obstruction. (*Illinois Terminal Railroad Co.* v. *Thompson,* 210 Ill. 226; *South Side Elevated Railroad Co.* v. *Nesvig,* 214 id. 463; *Wagner* v. *Chicago and Alton Railroad Co.* 265 id. 245.) And this rule has been held to apply where the dangerous obstruction (in that case a post) was alongside the track in a manufacturing plant, (*Illinois Central Railroad Co.* v. *Fitzpatrick,* 227 Ill. 478,) very much as in the case at bar. Plaintiffs in error concede this to be true, generally, when the railroad company operates its road on its own right of way, and admit that negligence is shown by the fact of the erection or maintenance by a railroad company of a dangerous obstruction in close proximity to its tracks and the operation of the cars past it, but contend that the mere operation of a train past a dangerous obstruction not situated on its own right of way and not on property under its control or in its possession is not, in itself, negligence on the company's part; that under such circumstances, in order to prove negligence on the part of the railroad company, it must be shown that it knew of the dangerous character of the obstruction and failed to warn its employees thereof. They contend that the manufacturing company built these gates and owned the switch tracks into this plant; that it was the duty of the railroad company to do the switching work of the manufacturing plant on these switch tracks and that such company or its receivers could not move or change the gate; that this duty rested only upon the factory officials. In *Illinois Central Railroad Co.* v. *Fitzpatrick, supra,* we held the railroad company liable for the mere operation of its trains near an obstruction in a foundry yard on tracks owned by the foundry company, and there was no question of warning. In *Illinois Terminal Railroad Co.* v. *Thompson, supra,* the railroad company did not own the yards and switch tracks, and yet it was held liable for operating the train on such switch tracks in dangerous proximity to a telegraph pole, the court saying (p. 232) : "It makes no

difference whether the appellant company owned the premises in fee or was in possession of them as a lessee or licensee." In *South Side Elevated Railroad Co.* v. *Nesvig, supra,* the elevated railroad company was held liable for negligence for operating a train in dangerous proximity to a pole not situated on its own right of way, the court holding that it was the duty of said company to its employees to so place its tracks on the line of its right of way as to leave sufficient space between its cars and objects not on its right of way, so that its employees could operate its cars without danger to themselves. In *Mobile and Ohio Railroad Co.* v. *Vallowe,* 214 Ill. 124, appellee was injured by the operation of trains of appellant in dangerous proximity to certain posts which supported a coal chute, but the proof showed that these posts were located as far from the track as it was possible to locate them to operate the coal chute and that it was necessary to have them in that position in order to operate the machinery to screen the coal; that "the operation of trains is attended with danger, and liability in such a case does not depend upon the presence of danger, but upon the existence of negligence on the part of the employer."

It is undoubtedly true that many duties required of employees in the work of a railroad company are attended with danger, and can only be carried on by means that are hazardous and dangerous to those who enter into such employment. Where no necessity, however, exists for the operation of such railroad under dangerous conditions, and where it only requires care and skill to make such conditions safe, "there is no reason why an employee should be subjected to dangers wholly unnecessary to the proper operation of the business of the employer." (*Choctaw, etc. Railroad Co.* v. *McDade,* 191 U. S. 64.) Plaintiffs in error were not required by law to operate these switch tracks in the yard of this manufacturing plant under conditions dangerous to their employees if it was practicable and feas-

ible for such dangerous conditions to be removed. If the railroad company had no such control as to be able to remove such dangerous conditions itself, it could require the owners of the plant to change these conditions, or refuse, until such change, to do such switching. The evidence shows that there was an open space both west and south of these gates, and hence the gate and post in question could have been placed further west and thereby afforded ample room and abundant clearance for the cars to pass. The evidence shows that the post and track in question had been in the same relative position for at least a year and a half prior to the accident; that plaintiffs in error were accustomed daily to operate their trains along the tracks and past the post, and that the Wabash was the only railroad operating trains upon this track. This was sufficient to charge plaintiffs in error with knowledge of the dangerous proximity of the post to the track. If the proof showed that the deceased came to his death by means of the close proximity of this post to the switch track, we think it is manifest that there could be recovery under the first charge of negligence,—that is, of operating this train in dangerous proximity to this post.

But if it were held that plaintiffs in error were not guilty of negligence in operating trains on this track and past this post, still it must be held that they were guilty of negligence, if they so operated, if they knew or ought to have known the dangerous proximity and that the deceased was not informed of that fact and they failed to inform him of it. This is conceded by plaintiffs in error, but they claim that the deceased was warned by his conductor, Barnett: It is not claimed that anyone else warned him. Barnett testified he had so warned him. It appears, however, from the evidence, that prior to the trial a representative of the defendant in error, Rea, interviewed Barnett, and that Barnett signed a statement which Rea wrote out, in which it is recited: "I never at any time warned

him of the fact that there was no clearance for a man on the side of the car,—on either side of the car coming out of the Staley starch works." Barnett, while admitting that he signed the statement, denied that he read it or that it was read over to him before signing it. Rea testified: "I wrote it down as he said it; I didn't read it over to him; he read it himself; he read it over and then signed it." The evidence shows that Barnett was an intelligent man, who had previously for years occupied a clerical position, and it seems unreasonable to believe that he would sign such statement without reading it or knowing its contents. Rea interviewed him a second time, and his testimony as to what the conductor told him then was in direct conflict with Barnett's testimony that he had warned the deceased. On this branch of the case it was undoubtedly true that defendant in error had the burden of proof that Bartlett had not been warned of the dangerous proximity of this post. In *Chicago and Eastern Illinois Railroad Co.* v. *Heerey,* 203 Ill. 492, the facts were quite similar on this question to those in the case here under consideration. There a fireman was killed in consequence of a defect in the engine. In that case the engineer testified that the deceased fireman did know of the defect, but it was shown that the engineer had previously stated that the fireman did not know, and in view of this statement and the presumption that "a person does not voluntarily incur danger or risk of death," the court held it was for the jury to say whether or not the deceased knew of the defect.

Plaintiffs in error further contend that they warned the deceased of the proximity of the post and track by means of a non-clearance list, which Bartlett receipted for at the time he was employed. The list referred to was printed, describing many non-clearance points at various places upon plaintiffs in error's line. It includes the following: "South side of track on north side of starch works, Decatur," and it is argued that this refers to the switch track and gates

here in question. The proof shows that there was a switch track outside of the yards on their north side, and there is force in the argument of counsel for defendant in error that this latter track was the one referred to in this clearance list. In any event, we think it was a question for the jury as to whether giving this list to the deceased was a sufficient discharge of plaintiffs in error's duty to warn him of the dangerous proximity of this post, and we also think it was a question for the jury, on this record, whether the conductor warned Bartlett of the condition of these gates and the dangerous proximity of this post.

One of the principal questions argued by counsel is whether plaintiffs in error's negligence was the proximate cause of the deceased's injury and death. This was a question of fact to be submitted to the jury, and the rule applicable when considering a motion to direct a verdict has been frequently stated by this court. In *McGregor* v. *Reid, Murdoch & Co.* 178 Ill. 464, it was said (p. 471): "All that the evidence tends to prove and all just inferences to be drawn from it in appellant's favor must be conceded to him. * * * Under the rule the evidence most favorable to appellant must be taken as true. * * * The credibility of the witnesses, the weight of the testimony, the drawing of the inferences of fact from facts proved, were all questions of fact for the jury to pass upon and not for the court to decide." It was there held that the trial court erred in directing a verdict, and the cause was reversed. If there is in the record any evidence from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find that all the material averments of the declaration have been proven, a verdict should not be directed. (*Libby, McNeill & Libby* v. *Cook*, 222 Ill. 206, and cited cases.) There was no eye-witness to the accident, and hence the question whether deceased was knocked off by the post depends upon the inferences to be drawn from the testimony. Circumstantial evidence is the proof of cer-

tain facts and circumstances in a given case from which
the jury may infer other connected facts which usually and
reasonably follow according to the common experience of
mankind. (*State* v. *Avery,* 113 Mo. 475; 11 Am. & Eng.
Ency. of Law,—2d ed.—502, note.) In criminal as well
as in civil cases a verdict may be founded on circumstances
alone. (*Slack* v. *Harris,* 200 Ill. 96; *Economy Light and
Power Co.* v. *Sheridan,* id. 439.) A greater or less proba-
bility, leading, on the whole, to a satisfactory conclusion,
is all that can reasonably be required to establish contro-
verted facts. (1 Greenleaf on Evidence,—16th ed.—sec. 1;
*Commonwealth* v. *Webster,* 5 Cush. 295; 11 Am. & Eng.
Ency. of Law,—2d ed.—490.)

The post in question was at the west end of the gate
when the gate was open. The evidence, we think, shows
clearly that it was the first obstruction that would be en-
countered by a person on a train moving eastward out of
the plant, as was this train. Whatever the cause may have
been, the deceased almost certainly was struck by the post.
He wore a soft hat and carried a club which switchmen use
in setting brakes. When he was last seen before the acci-
dent he was riding on a narrow ledge which extended across
the east end of the east car of the train, standing on this
ledge between the bumper and the south side of the car.
When he was next seen he was being rolled or dragged be-
tween the gate and the train as the train was passing this
gate. All the witnesses testified the man's hat and switch-
man's club, as well as his body, were found near the post.
It is clear from this evidence that he left the car about
at the post, whether he was knocked off, fell or jumped.
Plaintiffs in error's counsel argue that he may have been
taken sick and fallen off the car, or that a breeze may have
taken off his hat and in reaching for it he lost his balance,
or that he may have jumped from the car instead of swing-
ing onto the stirrup and fell and was caught before he
could get up. The evidence shows that the deceased was

about thirty years of age and up to the time of his death was a strong and healthy man, and the testimony of the conductor also indicates that when he left the car a short distance inside the plant, just before the accident, there was nothing the matter with Bartlett. If he had been taken sick and fallen off the car the probabilities are, in view of the place where he was standing, he would have fallen in front of the car instead of at one side. The speed of the train could not have caused a breeze, for it was running only four or five miles an hour, and there is no evidence that there was any wind blowing at the time, so it is quite improbable that a soft hat would have blown off and that he would have fallen off in reaching for it. The testimony of the conductor, Barnett, was that he had seen men jump down from such a position, but he further testified that nine hundred and ninety-nine times out of a thousand it would be done the regular way, by using the step. It is quite probable that if Bartlett had decided to jump he would have looked before he jumped and would have necessarily discovered the post and gate and their proximity to the track. But there was no occasion for him to jump. There was no duty for him to perform at that point. The switch onto the corn track was about one hundred or one hundred and twenty-five feet east of the gate, and if he had jumped and landed safely he would have had to walk that distance to the switch. No man of reason would have jumped from a moving train at this point, and the proof shows that the deceased was a prudent man. In *Wabash Screen Door Co. v. Black*, 126 Fed. Rep. 721, where there was no eyewitness to the accident, in affirming the judgment against the company the court said: "In the absence of direct testimony the simple suggestion of theories by the defense does not reduce the jury to mere speculation and disqualify it from determining the cause of the injury complained of. The theories suggested may be forced and fanciful, finding no reasonable foundation in the facts proved. They may

be explanations which do not explain; which the common sense of the jury, when applied to the testimony, would instantly reject." We think this reasoning applies with much force to the suggested explanations of counsel for plaintiffs in error. These explanations are unreasonable and forced, and the jury were justified in rejecting them. We think the conclusion that the deceased was knocked from the side of the car by the post while he was holding on by means of the stirrup and hand-holds, preparatory to dropping off to throw the switch onto the corn track, is a reasonable one. The argument of counsel for plaintiffs in error that he could stand on the stirrup alongside the car and clear the post if he kept his body in is without merit. The post was only eight or ten inches from the side of the moving car, and a person standing on the stirrup would almost certainly be knocked off by the post as the car was passing. The conclusion is almost inevitable that the deceased did not observe and know that the post was so near the car, or he would not have attempted to get down on the side of the car until after passing the gate, and consequently if he was standing on the stirrup he was standing there in the ordinary way and not squeezed in alongside the car. The stirrup was fastened to the under side of the body of the car, just around the corner from the ledge on which the deceased was last seen. The hand-hold was immediately above the stirrup. The uncontradicted testimony shows that the ordinary way in which a man would climb from the ledge to the stirrup was, that he would first turn, facing the car, and would then swing around down to the stirrup, and in doing so he would either be facing toward the west end or toward the side of the car. If the deceased was thus climbing down, his body would necessarily have extended out such a distance that he would be struck by the post when the car was passing it. "When a cause is shown which might produce an accident in a certain way and an accident happens in that manner, it is a warrantable

presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result." *Brownfield* v. *Chicago, Rock Island and Pacific Railway Co.* 107 Iowa, 254.

In *Chicago, Burlington and Quincy Railroad Co.* v. *Gregory*, 58 Ill. 272, where a locomotive fireman was killed and the plaintiff claimed the accident was caused by deceased's head striking against a mail catcher which stood too close to the track, there was no eye-witness to the occurrence and no evidence that the deceased had his head or body extended out of the engine, as would be necessary in order to bring him in contact with the mail catcher, but the court said: "The law only requires the highest proof of which the case is susceptible or that can reasonably be made. * * * We cannot resist the conclusion that the fatal collision occurred while Bennett was looking out of the side window or gangway for signals, in discharge of the necessary duties imposed upon him by his employment. * * * No other plausible theory has been or can be suggested, consistently with the evidence. The evidence makes no other impression on our minds, and we doubt not that it made the same impression on the minds of the jury."

In *Myers* v. *Pittsburg Coal Co.* 233 U. S. 184, a switchman was run over and killed in a coal mine. The evidence showed that the cars upon which deceased was riding had just passed under a wire stretched across the track, and deceased, shortly afterwards, was found lying upon the track. The court said (p. 192): "The opinion of the circuit court of appeals placed the reversal largely upon the want of definite proof as to the manner in which Myers came to his death,—whether by contact with the wire, or if so, whether that merely disabled him or he was only injured or stunned by the fall, was seized with vertigo or other sudden sickness and fell from the car for that reason, or lost his footing by some unexpected movement of the train, or voluntarily got off the car and stumbled or fell upon the track, or be-

came bewildered in the dark and mistakenly supposed himself to be in a place of safety. The court [the court of appeals] held that all these situations were more or less probable, and in the absence of some more accurate means of ascertaining· the true condition in this regard no recovery could be had for the wrongful causing of his death. * * * Unless the testimony was such that no recovery can be had upon the facts shown in any view which can be properly taken of them, the judgment and verdict of the district court must be affirmed. * * * In any case, it cannot be said, as a matter of law, that there was no evidence tending to show that Myers came to his death by the negligence of defendant in one or more of the ways charged in the petition. Considering the testimony, as it must be considered in determining the questions of this character in appellate courts, in its most favorable aspect to the plaintiff below, we think the jury might well have found, in view of the place at which the body of Myers was found, near to the wire, with his cap gone from his head, that he came in contact with that wire ·and was thrown to the ground, and that he survived from contact with the wire, carrying the voltage which it did, and while in this situation was run over and killed by the approaching motor car. * * * In our opinion the trial court properly left the question to the jury upon testimony which, when fairly considered, might sustain the verdict."

In *Choctaw, etc. Railroad Co.* v. *McDade, supra,* the brakeman who was killed was last seen upon top of his train, giving a signal as the train was approaching Goodwin station, where there was a water spout extending over the track so low that it would strike a man standing on top of a passing car. Shortly after passing Goodwin, McDade was missing from the train, and upon search being instituted his lantern was found on the car near the place where he was at the time of giving the signal. His body was found about 675 feet beyond the Goodwin tank. There

was no eye-witness as to the manner of the injury to Mc-Dade. The court affirmed the judgment, holding the appellant railroad negligently liable for his death.

While the evidence in the present case was largely circumstantial, in our judgment it was sufficient to warrant the submission of the question to the jury as to whether Bartlett came to his death by means of the negligence of the plaintiffs in error and while he was using due care.

Counsel for plaintiffs in error further argue that there should be no recovery here, because, under the facts in this case, it should be held that the deceased not only assumed the risk of the dangerous proximity of the post but was also guilty of contributory negligence. They argue that although the court holds the Workmen's Compensation act valid, the trial court erred in its rulings with reference to the questions of assumption of risk and contributory negligence. Said Workmen's Compensation act of 1911 provides that if the employer shall elect not to come under the act he is not to escape liability for injuries sustained by an employee because of the employee's assuming the risk, or because the injury or death was proximately caused by the contributory negligence of the employee. The law further provides that the contributory negligence shall be considered by the jury in fixing the amount of damages.

Counsel for plaintiffs in error contend that even if said Workmen's Compensation act be valid, yet there is no satisfactory proof that such act was properly rejected by plaintiffs in error. Decatur, where this accident occurred, is situated in the jurisdiction of the United States court for the southern district of Illinois. The record shows that plaintiffs in error were appointed as receivers of said railroad by the United States court of the eastern district of Missouri, and that the United States court of the northern district of Illinois had appointed the same persons as receivers in that district, but no orders were shown from the United States court of the southern district of Illinois that

in any way bore upon the question of their appointment or the right of the receivers to elect not to come under the provisions of this Compensation act. An order was introduced from the United States court of the eastern district of Missouri appointing Wells H. Blodgett general counsel for the receivers, and it is also admitted by counsel for the plaintiffs in error that said Blodgett was acting as general counsel for the receivers in Illinois. A copy of a letter sent by Blodgett to the State Board of Labor Statistics was introduced, said letter reading, in part, as follows: "The purpose of this letter is to advise you that the receivers of the Wabash Railroad Company have elected not to provide and pay compensation according to the provisions of this act." The argument of counsel for plaintiffs in error is that there is no proof in the record that Blodgett or the receivers were authorized by the United States court of the southern district of Illinois to reject this Compensation act; that the proof must show that they were authorized by the United States court of that district, and that authority from other district courts did not authorize them to so act within the territorial jurisdiction of the southern district of Illinois. Not only from the pleadings, (the general issue being filed by plaintiffs in error without raising this question,) but also from the admission of counsel in the record and in the briefs, there can be no question but that plaintiffs in error were acting as receivers for the Wabash Railroad Company in the southern district of Illinois and had authority so to act. The only question that can be fairly raised on this record is whether they had authority to elect not to come under the Workmen's Compensation act. By the order appointing these receivers in the Missouri district court they were authorized "to run, manage, maintain and operate said railroads and property wheresoever situated or found, whether in this State, judicial circuit or elsewhere, and to use, manage and conduct such business in such manner as in their judgment will produce the best

results, and to this end exercise the authority and franchise of said railroad company and discharge all the public duties obligatory upon it, * * * and manage and operate said railroads and property according to the requirements of the valid laws of the various States in which the same are situated and in the same manner that the defendant railroad company would be bound to do if in possession thereof." Obviously, under this power the receivers had conferred upon them authority to reject the Compensation act without first obtaining a special order of court for that purpose. It has been held, and rightly we think, that in railroad receiverships it would be impracticable, if not impossible, for the receivers to obtain a special order of court authorizing them to take various important actions necessary in the operation of the road before they could act. (*Continental Trust Co.* v. *Toledo, St. Louis and Kansas City Railroad Co.* 59 Fed. Rep. 514; *Vanderbilt* v. *Central Railroad Co.* 43 N. J. Eq. 669; 24 Am. & Eng. Ency. of Law,—2d ed.— 14, and cases cited.) But it is argued by counsel that this order did not give the receivers authority to act outside of the eastern district of Missouri. A court in a principal railroad receivership action has general power and authority over the entire railroad system, even though parts of it are not situated within the district in which the court sits, and this authority will be recognized in other jurisdictions, not only on the ground of comity between courts, but also as a rule of utility and convenience, resting upon principles of sound public policy. (*Dillon* v. *Oregon, St. Louis and U. N. Railroad Co.* 66 Fed. Rep. 622; *G. T. & S. D. Co.* v. *P. R. & N. E. R. Co.* 69 Conn. 709.) Without discussing in detail the various questions raised and discussed by counsel on both sides at great length on this subject, we conclude from the record that it is satisfactorily shown the Missouri receivers were authorized to accept or reject this Compensation act within the southern district of Illinois.

Counsel for plaintiffs in error further argue that the trial court, in submitting the case to the jury, should have left for its consideration, as to the entire case, the questions of the assumption of risk and of contributory negligence; that by submitting the case to the jury under both counts of the declaration and permitting the defenses of assumption of risk and contributory negligence to be submitted as to one count and excluding them as to the other count it committed prejudicial error even though the Workmen's Compensation act be valid; that in so doing the jury would necessarily give very little attention to the questions whether the deceased was guilty of contributory negligence or assumed the risk. In view of this record and our holdings on these points we cannot see how plaintiffs in error were injured by the submission of these questions to the jury in the form they were submitted. This conclusion is strengthened by the fact that the trial court submitted to the jury an interrogatory which read: "Did the deceased, under the evidence and the law as stated in the instructions relating to the second count of the declaration, assume the risk or danger which resulted in his injuries and death?" and the jury answered this question in the negative. It is thus evident that the jury did give serious consideration to the question of assumed risk. This interrogatory need not have been submitted to the jury as the Workmen's Compensation act is valid, but we cannot see how it was prejudicial to plaintiffs in error.

In this connection counsel argue that the court erred in its rulings as to the binding effect of the written application for employment which deceased signed before he entered the employment of plaintiffs in error. This application stated, among other things, that the deceased had been informed of his duties as switchman by a representative of the Wabash Railroad Company, and "that the performance of said duties will expose me to great danger, the risk of which I assume for myself." The court instructed the

jury, on behalf of defendant in error, that said clause just quoted was not binding upon the deceased and was not binding upon defendant in error so far as it purported to charge the deceased with assuming any risk or danger occasioned by plaintiffs in error's negligence; that such clause to that extent was void. The contract, as to that clause, was clearly contrary to public policy. (*Consolidated Coal Co.* v. *Lundak,* 196 Ill. 594; *Campbell* v. *Chicago, Rock Island and Pacific Railway Co.* 243 id. 620.) Counsel for plaintiffs in error, as we understand their argument, assert that this contract should be held as re-instating the defense of assumed risk, so far as it was lost by the rejection of the Workmen's Compensation act. Section 1 of the act provides that if the employer rejects the provisions of this act he cannot escape liability on account of the assumption of risk on the part of the employee. The instruction here in question does not intimate that the deceased, under the second count, might not be charged with assuming the risk in the event he knew of the dangerous proximity of the post and track or if the risk was open and obvious. Moreover, a number of plaintiffs in error's instructions expressly stated, as given by the court, that he would thus be charged with assuming the risk. The court did not err in giving this instruction.

Counsel further argue that the court committed error in permitting the fireman to testify that from his knowledge of railroading and the way railroad men do their work, he would say it was the duty of Bartlett to throw the switch on the corn track, under the circumstances shown on this record. They urge that the fireman was not qualified to testify on this subject. It is a matter of common knowledge that firemen on switch engines receive signals from the switchmen and necessarily observe which of them throws switches. The qualification of this witness rested largely in the discretion of the trial judge. *Stillwell & B. Manf. Co.* v. *Phelps,* 130 U. S. 520.

Complaint is also made here of the fireman's testimony that no one had told the deceased, so far as he knew, about the gate and post being close to the track, the objection to this being that "there had been no showing that he had ever been with the men under such circumstances that he might have heard such a statement." The objection to this testimony in the court below was a general one that it was incompetent, irrelevant and immaterial. Had the specific objection been raised at the time the witness' deposition was taken that is now urged it might have been obviated before the trial, and, as previously stated, it is not claimed that anyone but the conductor warned the deceased as to the situation of this gate and post. We have discussed the question as to the conductor's testimony heretofore.

Complaint is also made of the fireman's testimony as to the average earnings of the switchmen per month. Even though this testimony was incompetent the plaintiffs in error were not injured as the evidence was only cumulative, the conductor having testified to the exact earnings of the switchmen, and his testimony corresponded to that of the fireman.

Complaint is also made that the court permitted the following question to be answered by the conductor: "I will ask you, Mr. Barnett, you don't know what Bartlett was trying to do at the time he was hurt, do you?" The witness answered, "No." This witness on direct examination had testified that it was not deceased's duty to throw the switch on the corn track. It was competent to show, therefore, even though it might not be strictly the duty of Bartlett to throw this switch, that the conductor, the last time he saw him alive, did not know, as a matter of fact, that the deceased was not planning to throw the switch. Indeed, we think the proof shows clearly that if Bartlett did not know that the other switchman was to throw the switch or that the other switchman was where he could throw it more readily, it was Bartlett's duty to throw it. Bartlett did not

know that Northway was to throw this switch, as the conductor did not signal Northway to do this until after leaving Bartlett, just before the accident.

Certain other questions of minor importance are raised in the briefs. What we have already said we think sufficiently covers all of the questions not specifically passed on in this opinion. This case has been very exhaustively presented in the briefs of counsel. We have endeavored to give each of the many points raised the consideration due. We find no reversible error in the record.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*